UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

KEITH BUB a/k/a KEITH L. BUB,

                  Debtor.
------------------------------------------------------------------x

Case No. 11- 78278-reg

Chapter 7

## MEMORANDUM DECISION
(Re: Motions Objecting to Exemptions)

This matter is before the Court pursuant to motions ("Motions") by Kenneth Kirschenbaum (the "Trustee") and Rockstone Capital LLC ("Rockstone") (collectively, the "Movants") objecting to the exemptions claimed by Keith Bub (the "Debtor") in a Dodge Viper ("Viper") in the aggregate amount of $15,230.56. According to the Trustee, the Debtor is not entitled claim exemptions in the Viper because the Debtor did not have legal title in and to the Viper as of the date the Chapter 7 petition was filed. In the alternative, the Trustee argues that based on the equities of the case and the Debtor's conduct with respect to the Viper, he is not entitled to claim an exemption in the Viper. Rockstone also asserts that because the Trustee was constrained to retrieve the Viper from a third party pursuant to Bankruptcy Code § 542, and the Debtor had pledged the Viper to the third party as collateral for a loan prepetition, the Debtor is not entitled to claim the exemption pursuant to Bankruptcy Code § 522(g)(1).

Based on the undisputed facts of the case, the Court finds that the Debtor had legal title in and to the Viper as of the date the petition was filed. However, because the Debtor voluntarily pledged the Viper to a third party as collateral for a business loan, and the Trustee had to take steps to recover the Viper from the third party which had taken possession and control of the Vehicle, the Debtor is not entitled to claim the exemption with respect to the Viper. Section

522(g)(1) of the Bankruptcy Code provides that a debtor may claim an exemption as to property recovered by the Chapter 7 trustee only in limited circumstances. The transfer must not be voluntary, and the transfer cannot be concealed. While the Debtor did not conceal the existence of the Viper in his schedules, the Debtor voluntarily transferred an interest in the Viper to a third party prepetition, and permitted the third party to take physical control of the Viper. Despite the fact that the Trustee did not file a motion or bring on a proceeding to obtain turnover of the Viper or to avoid the lien, it is sufficient that the Trustee had to take steps to obtain possession of the Viper from a third party in order to administer the asset for the benefit of creditors. There is no binding precedent regarding what acts a trustee must take in order to constitute a "recovery" of an asset under this statute. However, neither the language of the statute nor applicable case law requires the Trustee to seek leave of the Court for a "recovery" to have taken place. The Court finds that under the facts of this case, the Trustee's acts were sufficient to constitute a "recovery" of the Viper and for these reasons, the objections to the Debtor's claimed exemptions in the Viper are sustained.

## PROCEDURAL HISTORY

On November 22, 2011 (the "Petition Date"), the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. The Trustee was appointed on November 22, 2011. On December 22, 2011, the Trustee filed a notice of discovery of assets in this case. On January 20, 2012, the Trustee filed a Notice of Sale of the Viper and two other vehicles (collectively, the "Vehicles")[1], and a public auction sale of the Vehicles took place on March 13, 2012. The Viper was sold for $37,500.00. On April 2, 2012, the Trustee filed a motion objecting to the Debtor's claimed exemption in the Viper [dkt 45]. On April 3, 2012, Rockstone Corp. ("Rockstone"), the

---

[1] The other two vehicles are Vipers as well.

Debtor's largest creditor with a claim in the amount of $774,225.35, filed a motion objecting to the Debtor's claimed exemption in the Viper ("Rockstone Objection") [dkt 46]. On May 15, 2012, the Debtor filed opposition to the Motions [dkt 51] and on May 18, 2012 and May 21, 2012, the Trustee and Rockstone, respectively, filed replies [dkt 53 and 54]. A hearing on the Motions was held on May 30, 2012, and the matter was marked submitted one week later. On June 7, 2012, the Trustee filed a motion to compromise controversy with respect to the Debtor's claimed exemption in the Viper ("9019 Motion"), and on June 22, 2012, Rockstone filed an opposition to the 9019 Motion. The Debtor and the Trustee each filed a reply to Rockstone's opposition, and on June 29, 2012, Rockstone filed a supplemental objection to the 9019 Motion. A hearing on the 9019 Motion was held on July 2, 2012, and the Court denied the 9019 Motion.

In the meantime, on April 19, 2012, Rockstone commenced an adversary proceeding seeking denial of the Debtor's discharge. By memorandum decision dated November 13, 2013 ("Memorandum Decision"), judgment was granted in favor of Rockstone, and the Debtor's discharge was denied. The Debtor appealed the Memorandum Decision, and by memorandum decision dated June 25, 2014, the District Court for the Eastern District of New York affirmed this Court's findings in the Memorandum Decision.

### FACTS

Prepetition, the Debtor owned the Vehicles, which were titled in his name. In June 2007, the Debtor transferred title in the Vehicles to his son, who was the age of one at the time.[2] Notwithstanding the fact that the Debtor no longer had legal title to the Vehicles, on December 14, 2007, the Debtor pledged the Vehicles as collateral for a loan in the amount of $195,000

---

[2] While not germane to the outcome of the decision, the Court questions whether a one year old may hold title to a vehicle. It is also apparent that the transfers were made for no consideration and the Debtpr retained control over the Vehicles after the transfers to the Debtor's son took place.

made by Jaylyn Sales, Inc. ("Jaylyn Sales") to a company owned by the Debtor. While the loan was memorialized by a written note, the security interests granted to Jaylyn Sales were never perfected because the liens were never noted on the certificates of title to the Vehicles. (Ex. B and C, Rockstone Reply). On March 24, 2011, Ira Goldman, the principal of Jaylyn Sales, entered into a written agreement with Triple G LLC ("Triple G") for the storage of the Viper at a location in Hauppauge, New York for a monthly fee of $299.00. (Ex. G, Rockstone Motion).

On November 10, 2011, the Debtor filed applications to have title to the Vehicles transferred from the Debtor's son back to the Debtor. The Debtor has provided copies of receipts for the three transfers of title. (Debtor Ex. C). The New York State Department of Motor Vehicles processed the applications for title transfer and issued new certificates of title in the Debtor's name for the Vehicles and mailed them to the Debtor. The new title certificates are dated December 1, 2011. (Debtor Ex. D).

Twelve days after filing applications for transfer of title to the Vehicles, the Debtor filed the bankruptcy petition. In the schedules, the Debtor listed Jaylyn Sales as a secured creditor in the amount of $195,000, asserting that Jaylyn Sales obtained a judgment lien on the Vehicles. On Schedule C, the Debtor claimed the federal exemptions pursuant to Bankruptcy Code § 522(b)(2), and specifically claimed $3,450.00 in an automobile exemption with respect to the Viper, plus an additional $11,780.56 in the "wildcard" exemption under § 522(d)(5) with respect to the Viper. The Debtor made an offer for the purchase of the Vehicles to the Trustee, which was rejected. By letter dated January 6, 2012, the Trustee advised David Maltz, the Court appointed auctioneer, to take steps to pick up the Viper in storage at the premises of Triple G, LLC pursuant to conversations the Trustee had with a party representing Triple G. (Rockstone Motion, Ex. J). According to the Debtor, he contacted Triple G to advise that David Maltz

would be taking the Viper, and both the Debtor and Triple G cooperated with the delivery of the Viper to the Trustee.

On January 25, 2012, the Debtor amended the schedules to reflect that Jaylyn Sales had a "warehouseman's lien" in the amount of $2,086.91, which lien the Debtor listed as disputed. The Trustee did not make a motion for turnover under section 542 or bring on any proceeding to obtain possession of the Viper. However, the Trustee did communicate with Triple G to facilitate the transfer of the Vehicles from Triple G to the Trustee's auctioneer. The Trustee sold the Vehicles for the aggregate price of approximately $105,000.00. The Viper was sold for the sum of $37,500.00. There is no evidence in the record that the Debtor took any steps to rescind the lien previously granted to Jaylyn Sales on the Viper, or that the Debtor actually entered into the lease with Triple G for the storage of the Viper.

## DISCUSSION

The Debtor has claimed exemptions in the Viper totaling $15,230.56. The Trustee and Rockstone raise several objections to the claimed exemptions. First, both the Trustee and Rockstone assert that as of the Petition Date, the Debtor's son held legal title to the Viper. Because the Viper was not property of the Debtor's estate, the Debtor was not entitled to claim an exemption in the Viper. Second, Rockstone asserts that the Debtor is statutorily barred from claiming an exemption in the Viper pursuant to section 522(g) of the Bankruptcy Code. For the reasons set forth below, the Court concludes that the Viper was an asset of the Debtor's estate, but the Debtor is barred from claiming an exemption in the Viper under Bankruptcy Code § 522(g).

    1. The Viper was Property of the Debtor's Estate

Pursuant to § 541 of the Bankruptcy Code, a debtor's estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case" and "[a]ny interest in property that the trustee recovers under . . . section 543 [or]550." 11 U.S.C. §541(a)(1) and (a) (3). In this case, the Debtor admits he transferred the Viper to his son prepetition, but claims he transferred title back to himself prepetition as well. Under New York law, which governs this issue, an entity is the owner of a motor vehicle upon delivery of possession of the vehicle to the new owner and the submission of an appropriate application to the Department of Motor Vehicles for transfer of title. NYS Vehicle and Traffic Law §§ 2113 and 2116. (McKinney's 2015). Section 2113(a) directs an owner to transfer his or her interest in a vehicle by executing an assignment and warranty of title on the certificate and delivering the certificate to the transferee. Section 2113(b) provides that the transferee shall submit an application for a new title certificate to the Department of Motor Vehicles within 30 days after conveyance of the vehicle. In this case, the Debtor submitted his application for a new title certificate and paid the filing fee on November 10, 2012.

Under New York case, law, title to a motor vehicle is transferred when the parties intend such transfer to occur. *Potter v. Keefe*, 261 A.D.2d 864, 690 N.Y.S.2d 351 (4th Dept. 1999) (other citations omitted). In this case, the Debtor obtained title to the Viper at the latest, on November 10, 2011, upon submission of the application to the Department of Motor Vehicles for transfer of title. As this was prior to the Petition Date, the Debtor had legal title to the Viper as of the Petition Date. Therefore, the Viper was property of the Debtor's estate, albeit encumbered by a claim asserted by Jaylyn Sales, and in the possession of a third party at the direction of Jaylyn Sales. Because the Trustee's objections are based on this argument alone, its motion is denied.

1) The Debtor is not entitled to assert an exemption in the Vehicle under 11 U.S.C. § 522(g)

Having established that the Debtor had title to the Viper on the Petition Date, the next issue to resolve is whether the Debtor is entitled to claim an exemption in this asset.  According to Rockstone, the Debtor may not claim an exemption pursuant to § 522(g) of the Bankruptcy Code, which governs the right to claim exemptions in property recovered by the Chapter 7 trustee under, *inter alia*, § 542 or §550 of the Bankruptcy Code.  Section 522(g) provides as follows:

> Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551 or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if –
> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
> (B) the debtor did not conceal such property.

11 U.S.C. § 522(g).

Rockstone acknowledges that the Debtor disclosed the Viper in his petition, but alleges that the Debtor voluntarily pledged the Viper to Jaylyn Sales prepetition, and gave Jaylyn Sales physical possession of the Viper prepetition.[3]  At a minimum, the Trustee was required to take steps to obtain turnover of the Viper, which satisfies the statute.  The Debtor claims that the Trustee did nothing to "recover" the Viper, and without satisfying this requirement, this statue is inapplicable.  According to the Debtor, because the Trustee did not enforce his authority over the Viper, and the Trustee was not forced to seek relief from the Court in order to obtain turnover of the Viper, the Debtor retains his right to claim an exemption in the Viper.  Furthermore, the

---

[3] The Debtor exercised control over the Viper after he transferred it to his son, which, coupled with circumstances surrounding the transaction, strongly suggest that the Debtor's transfer of the Viper to his son constituted a fraudulent conveyance.

Debtor cooperated with the Trustee, and did nothing to hinder the Trustee from exercising his rights, powers and duties regarding the Viper. Notwithstanding the Debtor's purported cooperation, the Court notes that it was the Debtor 1) who transferred the Viper to his one year old son, 2) pledged the Viper as collateral for a loan obtained by the Debtor's company, and 3) permitted the creditor to take possession of the Viper and store it at a facility, which continued after the Petition Date.

The Debtor's argument is based on a misunderstanding of the statute. The Debtor fails to recognize that the Debtor's pledge of the Viper as collateral is a voluntary "transfer," and it follows that Jaylyn Sales' storage of the Viper with Triple G was done in furtherance of that transfer.

The term "transfer" is read broadly according to the legislative history of section 101(54):

> [A] transfer is a disposition of an interest in property. The definition is as broad as possible. Many of the potentially limited words in current law are deleted, and the language is simplified. Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer to title, because possession, custody, and control are interests in property.
>
> S. Rep. No. 989, 9th Cong., 2d Sess. 27 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5813.

Therefore, even though the Debtor transferred title to the Viper back in his name prepetition, this did not erase the lien granted to Jaylyn Sales, or the transfer of possession of the Viper to Jaylyn Sales. Once the petition was filed, the Trustee had the authority to avoid the lien or compel Jaylyn to turn over the Vehicle. While the Debtor claims that listing the Viper in the petition as encumbered by a judgment lien held by Jaylyn Sales was an error, the documentary evidence establishes that the Debtor pledged the Viper to Jaylyn Sales pursuant to a note and

security agreement. In addition, the documentary evidence supports a finding that at a minimum, the Viper was under the physical control of Jaylyn Sales, as it entered into the storage lease with Triple G, and Jaylyn Sales claimed a warehouseman's lien on the Viper.

Having established that a transfer of the Viper took place prepetition, the next issue to resolve is whether the Trustee's acts to obtain the Viper from a third party asserting a lien on the Viper satisfy the remainder of the statute. First, it is axiomatic that "the Trustee cannot receive property and have it become property of the estate except as specifically authorized by the Bankruptcy Code through its avoidance power." *In re Floyd*, 423 B.R. 579, 583 (Bankr. M.D. Ga. 2009). The Trustee had to rely on his statutory powers to avoid the unperfected lien on the Viper, and to obtain turnover of the Vehicle.

Second, there is no requirement that the Trustee initiate an adversary proceeding or seek relief from the Court to recover the property. Although there is no binding precedent in this Circuit on this issue, the Court of Appeals for the Tenth Circuit has ruled that an adversary proceeding need not be commenced for this statute to apply:

> "The second requirement [that the trustee recover the property] is likewise satisfied as the trustee's efforts to convince Toyota to release its lien constitute a valid recovery. Indeed, a trustee need not initiate formal adversary proceedings to recover property under § 522(g), so long as the trustee has taken some action resulting in the reconveyance of the property to the estate. *Glass v. Hitt (In re Glass)*, 60 F.3d 565, 568-69 (9th Cir. 1995); *In re Hicks*, 342 B.R. 596, 599-601 (Bankr. W.D. Mo. 2006). Given both the voluntary transfer and the recovery, the exemption here was invalid under § 522(g).
>
> *Russell v. Kuhnel (In re Kuhnel)*, 495 F.3d 1177, 1181 (10th Cir. 2007).

The Court of Appeals for the Ninth Circuit has also concluded that a formal proceeding need not be commenced by the trustee for a recovery to occur. In *Glass v.Hitt (In re Glass)*, 60 F.3d 565 (9th Cir. 1995), the Ninth Circuit considered the meaning of "recovers" and found that

while a trustee must be authorized to recover the property in question, the trustee does not have to actually exercise those powers by commencing a lawsuit. It was enough that the trustee threatened to commence an avoidance action, which triggered the reconveyance of estate property back to the debtor. *Id*. at 569.

Other courts also have ruled that an adversary proceeding need not be commenced in order for the exemption to be denied under this statute. *In re Ulrich*, 203 B.R. 691 (Bankr. C.D. Ill. 1997), and *In re Trevino*, 96 B.R. 608 (Bankr. E.D.N.C. 1989). While there is no evidence in this case that the Trustee threatened to commence an action in order to recover the Viper, the steps the Trustee took to obtain possession of the Viper from a third party and to administer the asset free of any claimed lien were sufficient in this case to constitute a recovery of the property by the Trustee. The Debtor's cooperation with the Trustee does not negate the fact that the Trustee was instrumental in recovering an asset of the estate that the Debtor had pledged as collateral for a loan, and that was in the possession of a third party.

## CONCLUSION

For the reasons set forth herein, the Motions by Rockstone and the Trustee are granted and the Debtor's objections are overruled. An order consistent with this Memorandum Decision shall be entered forthwith.

Dated: Central Islip, New York
      April 1, 2015                      By: */s/ **Robert E. Grossman***
                                            Robert E. Grossman,
                                            United States Bankruptcy Judge